NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Harrison Eagle, LLP and Promonta Realty Corp.,** | Civil Action No. 06-cv-3074 (PGS) |
| Plaintiffs, | |
| v. | **OPINION** |
| **Town of Harrison, Harrison Redevelopment Agency, Harrison Commons, Inc. and Harrison Commons, LLC** | |
| Defendants. | |

**SHERIDAN, U.S.D.J.**

Currently before this Court is Defendants' motion to dismiss Plaintiffs' complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs opposed this motion, and the Court held extensive oral arguments on the matter[1]. For the reasons set forth below, this Court will dismiss some of the claims and retain jurisdiction over others.

I.

On July 6, 2006, Plaintiffs (collectively referred to as Plaintiffs or Harrison Eagle)[2] filed a seven count complaint against the Defendants concerning certain property that it owns in Harrison,

---

[1] Following oral argument both parties filed briefs without leave of court. The briefs were stricken by Order of this Court.

[2] Although Harrison Eagle recently acquired the property, the persons who control and own Harrison Eagle are the predecessors in title or their heirs. With regard to this case, the parties concede that this is of no legal significance.

1

New Jersey asserting various constitutional claims. In the late 1990s, Harrison sought to transition itself from a declining industrial town to an upscale office/retail community. For that purpose, on or about April 1, 1997, pursuant to *N.J.S.A.* 40A:12A-5, the Mayor and Council of the Town of Harrison ("Council") passed Resolution No. 19249 which authorized an investigation of whether a 290 acre area of the town ("Project Area") was blighted and in need of redevelopment. On September 4, 1997, having reviewed the results of the investigation, the Mayor and Council adopted Resolution No. 19354 declaring that the Project Area was in need of redevelopment. Following the statutory process, the Mayor and Council on November 16, 1998 adopted Ordinance No. 994 which authorized a Waterfront Redevelopment Plan ("Plan") including a provision which established the Harrison Redevelopment Agency ("Agency"). In 1999, the Agency was formed and organized pursuant to Ordinance No. 1010. About a year later, the Agency entered into an agreement with Harrison Commons, LLC ("HCI") naming it as the sole developer to implement the redevelopment of Harrison's waterfront.

      The Plan is ambitious. It provides for extensive infrastructure improvements and flood control initiatives. The improvements include a bridge over the Passaic River connecting the Project Area with the Ironbound section of Newark, and interchange upgrades on Route 280. The Plan envisions 7,000 new housing units, 3.5 million square feet of office space, 1.2 million sq. feet of retail space, and a 25,000 seat sports stadium. In addition, the Plan required permits from many state agencies as well as the Army Corp of Engineers and the Environmental Protection Agency. Since the initial adoption of the Plan and the designation of a developer, redevelopment has languished. According to Plaintiffs, there has been little or no headway made on the design, funding for the aforementioned public infrastructure, or assemblage of land necessary for Plan implementation. Defendants argue that the delays are due in part to ongoing litigation concerning the Waterfront

Development Plan. However, it is unclear what specific claims have been addressed and/or resolved in these other law suits. In addition to the ongoing litigation concerning the Plan, there was prior litigation in this Court among the parties in this case[3].

In November, 2003, the Plan was amended. It appears that many of its original components remained in the amended plan.

On June 29, 2006, the Harrison Redevelopment Agency notified Harrison Eagle by letter that condemnation proceedings with respect to its property within the Project Area would commence on July 10, 2006. Plaintiff, outracing Defendants to the court house, instituted this action on July 7, 2006. Shortly thereafter, Defendants commenced a condemnation proceeding in state court on July 10, 2006 (*Harrison Redevelopment Agency v. Harrison Eagle LLP, et al.* Superior Court of New Jersey, Law Division, HUD L-3250-06).

On February 13, 2007, the Hon. Maurice Gallipoli issued a decision declaring the that the condemnation was for a public purpose as originally proposed, and that the statute upon which it was based was constitutional. Plaintiffs filed a motion for reconsideration of Judge Gallipoli's Order. That motion was denied on April 23, 2007. On May 1, 2007, Plaintiffs filed an appeal with the Appellate Division; but interim relief was denied by both by the Appellate Division and the Supreme Court of New Jersey. Accordingly, the appeal on the merits is currently pending in the Appellate Division.

---

[3] The prior case was dismissed without any decision on the merits. *Steven Adler v. The Town of Harrison*, Docket No. 01-cv-4639 WHW. Evidently, that case was administratively terminated pursuant to Local Civil Rule 41.1 for failure to prosecute. According to Plaintiff, settlement negotiations were ongoing at the time of that administrative termination.

II.

The standard of review for a motion to dismiss in a facial attack under Rule 12(b)(1) for lack of subject matter jurisdiction is similar to the standard governing a Rule 12(b)(6) motion. *In re Franklin Mutual Funds Fee Lit.*, 388 F.Supp. 2d 451, 459 (D.N.J. 2005). In a Rule 12(b)(6) motion to dismiss for failure to state a claim, the well-pleaded factual allegations contained in a complaint must be accepted as true. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 174 (3d Cir.2000); *Nami v.Fauver*, 82 F.3d 63, 65 (3d Cir.1996). However, the court will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Kelly v. Edison Township*, 377 F.Supp.2d 478, 481 (D.N.J. 2005). In ruling on a motion to dismiss, a court may consider the allegations of the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004).

In this case, Plaintiffs seek a declaratory judgment that the actions of Defendants are unconstitutional. Plaintiffs also seeks a preliminary and permanent injunction enjoining Defendants from taking any further action with respect to the Project Area and in particular their property, currently the subject of a state court condemnation proceeding.

Defendants move to dismiss the complaint on several grounds including (1) that the complaint fails to state a claim, as it is time-barred by the statute of limitations; (2) that this Court is required to abstain; and (3) that this Court lacks subject matter jurisdiction. Each of these arguments are discussed below.

**Statute of Limitations:**

Congress, in enacting the Civil Rights Act (42 U.S.C. §1983, et seq.) did not set forth a specific statute of limitations period. In such a case, the court looks to the most analogous state

statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 271 (1985). Generally, the most appropriate statute of limitations period for §1983 actions is the state's personal injury statute. *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272, 276 (3d Cir. 2004); *but see, 287 Corp. Ctr. Asscs. v. Township of Bridgewater*, 101 F.3d 320 (3d Cir. 1996) (holding that for §1983 actions, the statute of limitations period is two-years, and six-years for inverse condemnation proceedings).

In this case, the parties dispute which is the applicable statute of limitations period. Both parties cite to *287 Corp*. in support of their different positions. Defendants maintain that the two year statute of limitations period is appropriate, while Plaintiffs maintain that the six year statute of limitation is the most appropriate. This case, like *287 Corp.*, is a mix of both personal and property rights claims. In *287 Corp.,* the Third Circuit recognized such situations exist. In that case, the Third Circuit found that a Fifth Amendment improper taking and inverse condemnation claim is subject to New Jersey's six year statute of limitations period, while due process and equal protection violations are subject to the two year statute. *287 Corp.*, 101 F. 3d at 323-324 (*citing N.J.S.A.* §2A:14-1). With *287 Corp.* as precedent, the Court evaluates each count of the Complaint to determine whether it survives the applicable statute of limitations, except for Count VI which has been voluntarily dismissed by Plaintiff.

Count I requests a declaratory ruling that the Agency's actions since 1999 are illegal because the Agency did not comply with statutory requirements. As a result, all of the agency actions would be void. Plaintiffs also request an injunction preventing the Agency from taking any further action. This fact, if proven, has been known to Plaintiffs since 1999. The Plaintiffs do not convincingly show any reasons why the time of accrual should be delayed from that date to the filing of the Complaint in this case. This is especially true since there was prior litigation which was dismissed without prejudice. Plaintiffs knew they were at risk of relinquishing such claims by not

5

pursuing the claim during the prior suit. This Count is dismissed under either the two year or six year statute.

Count II alleges a due process violation. Plaintiffs argue that (a) the Agency's illegal composition; (b) the failure to implement flood-prevention plans and transportation plans; and (c) failure to adhere to the development schedule constitute a violation of the due process clause. All of these facts have been known since at least since 2003 when the Waterfront Redevelopment Plan was revised. As in *287 Corp.*, such a due process claim is more akin to a personal right of the property owner rather than a right based on property ownership. This claim should have been brought within two years of the Plan amendment.

The Plaintiffs attempt to circumvent the two year statute by arguing that this due process claim is a continuing wrong. The Third Circuit has held that where "defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *287 Corp. Ctr. Asscs. v. Township of Bridgewater*, 101 F.3d 320, 324 (3d Cir. 1996); *citing Brenner v. Local 514, United Bhd. Of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991). Here, Plaintiffs argue that the June 2006 condemnation notice was the last affirmative act of the Defendants under the amended Waterfront Redevelopment Plan, thus making their constitutional claims timely. In order to distinguish between sporadic acts and on-going patterns, the Third Circuit utilizes three factors. They are: (1) subject matter, i.e. whether the violations constitute the same type of discrimination; (2) frequency, i.e. whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence, i.e. whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights; and, whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. The final factor is the most important inquiry. *Berry v. Board of*

*Supervisors of Louisiana State University*, 715 F.2d 971, 981 (5th Cir.) (1983);  *Lynch v. City of Philadelphia*, 194 Fed. Appx. 89, 92 (3d Cir. 2006).  Arguably, Plaintiffs meet the first two factors; however, it fails on the permanency prong.  Under the permanency prong, the degree of permanence weighs against the finding of a continuing violation.  Generally, the purpose behind a statute of limitations is to require Plaintiffs to exercise reasonable diligence in pursuing their claims. *Cowell v. Palmer Township*, 263 F.3d 286, 295 (3d Cir. 2001).  Here, Plaintiffs were aware of the alleged due process violation by 2003 at the latest,  when the amended Plan was adopted. Adoption of the Plan amendment is by way of a formal legal process after notice and hearing occur.  It is a procedure which should have triggered Plaintiffs' awareness of their necessity to act.  Plaintiffs should have acted within two years of the amended Plan's adoption.

      Plaintiffs also assert that the doctrine of equitable tolling should apply in this action.  This argument lacks merit.  Equitable tolling functions to stop the statute of limitations from running when a claimant's accrual date has already passed.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d. Cir. 1994).  Its application is warranted when (1) the Defendant has actively misled the plaintiff regarding their cause of action, (2) the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) plaintiff mistakenly asserted his or her rights in the wrong forum.  *Forbes v. Eagleson*, 228 F.3d 471, 486-87 (3d Cir. 2000).  While Plaintiffs assert that the Defendants misled them by engaging in settlement negotiations, this is not credible.  Plaintiffs were represented by counsel at all times, and the matter could have been reopened by application to the Court.  Plaintiffs chose not to do so. Under the circumstances, Plaintiffs were not deliberately misled.  *Levine v. N.J. State Dep't of Cmty. Affairs*, 2007 U.S. App. LEXIS 8318, *5 (3d Cir. 2007) (unreported).  The fact that Defendants engaged in settlement negotiations does not

obviate Plaintiffs' knowledge of the facts that served as a basis for their claims or prevented them from asserting those rights.

Count III alleges a denial of equal protection based upon two separate grounds. First, the Plan discriminates between property owners within the Project Area because of the "excessive size" of the Project Area. Because of the lack of government funding for infrastructure, some owners "will suffer under the threat of condemnation" for a longer period of time while others will not be subjected to [the same] level of uncertainty". Secondly, the Plan discriminates between Plaintiffs and owners outside the Project Area because owners outside the Project Area do not suffer a threat of condemnation. For the same reasons as set forth in dismissing Count II, Count III must also be dismissed. The Plaintiffs have known most, if not all, of these facts since 1999, and the rights violated are based on personal rights rather than property rights. There is no reason that the two year statute should not apply.

Count IV alleges a breach of the Fifth and Fourteen Amendments. In this count, Plaintiffs allege that the Agency's actions "cast a cloud of condemnation over the Properties . . . [t]his cloud has had a chilling effect on [prospective long term] tenants who would otherwise have rented portions of the Properties . . . " This loss of income claim is directly related to the quiet enjoyment of the property. As such, it is a property claim that is subject to the six year statute of limitations. There is no proof that the cloud on the property became known to Plaintiffs more than six years prior to the filing of this lawsuit suit. *Berry v. Bd. of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983). As such, this claim is limited to the six years prior to the filing of this law suit.

Counts V (absence of public purpose) and VII (invalidity of finding of blight due to Passage of Time and Changed Condition) are very similar claims and are analyzed together. The Fifth Amendment allows the government to take property for a public purpose upon payment of just

compensation. In this case, the finding of blight was more than a decade ago. Plaintiffs now challenge whether that finding is still valid today. Overlaying this argument is Plaintiffs' contention that the Plan itself is unworkable because it is premised on huge public infrastructure contributions from third parties (state and federal government) which have not materialized. In short, Plaintiffs' claim is that the Plan has proven to be futile. Assuming Plaintiffs allegations are correct for purposes of this motion, there is no public purpose underpinning the condemnation because neither blight exists, nor will redevelopment occur as envisioned due to lack of public infrastructure investment. Since a condemnation action cannot proceed unless a public purpose exists at the time of taking, these counts necessarily accrue on or about that time. Hence, Counts V and VII are not time barred.

In short, Counts IV, V, and VII are deemed to be timely filed. While I, II and III are dismissed as untimely.

### III.

As stated above, Plaintiffs' claims that relate to the property and premised on the Fifth Amendment remain at issue. With regard to these remaining claims, Defendants assert that *Younger* and *Burford* mandate this Court's abstention in this matter. *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). According to Defendants, this case involves a state's eminent domain proceeding, and any action by this Court would constitute an impermissible injunction on state action. Moreover, under *Burford*, abstention is particularly appropriate in land use matters to which this case is akin to[4].

---

[4] Since the *Colorado River* abstention is only cursorily mentioned by defendants, the Court assumes defendants are not raising it as an argument. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1983).

Generally, *Younger* abstention is appropriate when three requirements are present, namely, (1) ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) state proceedings afford an adequate opportunity to raise federal claims. *Tucker v. Ann Klein Forensic Ctr.*, 174 Fed. Appx. 695, 697 (3d Cir. 2006). The Court is not satisfied that the state proceeding affords Plaintiffs adequate opportunity to raise its federal claims[5]. *Yi Tang v. Tsui*, 416 F.3d 199, 202 (3d Cir.2005).

The Third Circuit has instructed that abstention should be utilized sparingly, and where it is clear that important state interests are at issue. *Addiction Specialists, Inc. v. The Township of Hampton*, 411 F.3d 399, 408-415 (3d Cir. 2005). In *Addiction Specialists*, the Third Circuit reversed the district court's decision to abstain from a challenge to a zoning ordinance. In *Addiction*, Plaintiff, owner and operator of a proposed methadone clinic, asserted that the Township's zoning ordinance effectively barred the development of a methadone clinic. The claims included federal constitutional challenges to both the legality of the land use ordinance and its application by the Township officials. The Third Circuit distinguished between actions which impacted on important state issues and those which did not. The Third Circuit held that challenges to the validity of the ordinance were important state interests from which the District Court properly abstained; however, the allegedly improper acts of the Township officials did not implicate any state interests and are not a proper basis for abstention. This result is seemingly analogous to the *Gwynedd Properties* case where the Third Circuit held that a "federal claim challenging the discriminatory actions of township officials in making land use decisions - as opposed to a claim challenging the validity of the state's land use

---

[5] Plaintiffs argue that the three requirements for *Younger* abstention must be present at the time the Complaint is filed; and since this lawsuit was filed prior in time to the condemnation matter, *Younger* is not applicable. This argument is not correct in this instance. *See, Hicks v. Miranda*, 422 U.S. 332 (1975); *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 230 (1984); *New Albany DVD v. City of New Albany*, 350 F. Supp. 2d 789, 793-94 (S.D. Ind. 2004).

10

policies and laws - did not implicate important state interests for *Younger* abstention purposes." *Addiction Specialists, Inc. v. The Township of Hampton*, 411 F.3d 399, 409 (3d Cir. 2005)*; Gwynedd Properties, Inc., v. Lower Gwynedd Township*, 970 F.2d 1195, 1202-1203 (3d Cir. 1992). However, in *Gwynedd Properties*, the court ruled that abstention may still be appropriate if the District Court were to issue an injunction enjoining the Township's selective enforcement of its policies which would be tantamount to invalidating the land use policies themselves. *Id.* at 1202-1203. *Addiction Specialists*, 411 F. 3d at 410-411 n. 9-10. In *Addition Specialists*, the Third Circuit instructed that where the court abstains on some claims but not others, it may be best to stay the federal proceedings until the state lawsuit is concluded. *Addiction Specialists*, 411 F. 3d at 414. *Addiction Specialists* is applicable here. In this case, the Court is not satisfied the state proceedings adequately protect Plaintiff's federal constitutional rights in two respects.

First, as reasoned in the previous section, Counts V and VII challenge whether the public purpose behind the condemnation is still viable today. (See p. 8-9 of this Opinion). From a reading of the Superior Court's decision, and the denial of interim relief by the Appellate and Supreme Court of New Jersey, I cannot say with any degree of certainty that Plaintiff will be allowed to challenge the "public purpose" behind the condemnation as set forth in the Takings Clause based upon facts known today.

Secondly, in Count IV, Plaintiff alleges a cloud on the property because prospective tenants would not enter a long term lease since such tenants do no wish to take the risk that they may be abruptly evicted due to an impending condemnation. This may be viewed as a partial taking of property and/or damages suffered. It is unknown whether this element of damages will be adjudicated in the state court proceedings. The condemnation statute does not appear to authorize such damages. *N.J.S.A.* 20:3-29 and 38. *See, also, Middlesex County v. Clearwater Village*, 163

11

N.J. Super. 166 (App. Div. 1978), *certif. den.* 79 N.J. 483 (1979). For these two reasons, abstention would not be appropriate.

Having found same, the Court recognizes the comity between state and federal courts is a delicate balance. In addition, any substantive rulings on the case by this Court may interfere with the resolution of important state interests. Accordingly, the Court will stay all litigation with regard to Counts IV, V and VII until such time as all state court litigation is concluded. At that time, the Court will determine if the concerns expressed herein have been adequately addressed by the Superior Court of New Jersey.[6]  *See*, *Addiction Specialists*, 411 F.3d at 414.

September 21, 2007                     s/*Peter G. Sheridan*
                                       PETER G. SHERIDAN, U.S.D.J.

---

[6] Defendants maintain that this court lacks subject matter jurisdiction because plaintiffs have failed to exhaust state court remedies. *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985). In light of the Court's ruling to proceed on the remaining federal constitutional claims (Counts IV, V, VII) subsequent to conclusion of state court proceedings, Defendants argument regarding exhaustion is adequately addressed.